Filed 12/27/22  Bagby v. Davis CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DOUGLAS A. BAGBY, | B320533 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC663174) |
| v. | (Bruce G. Iwasaki, Judge) |
| JOSEPH DANIEL DAVIS, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:*

It is ordered that the opinion filed herein on December 13, 2022, be modified as follows:

On page 2, replace "On April 30, 2019, Davis invested $3.8 million in the Nevis Island LLC." with "On April 30, 2019, Davis signed an agreement to invest $3.8 million in the Nevis Island LLC."

On page 3, footnote 1, replace "The parties fail to explain the discrepancy between the $3.8 million transferred by Davis into the Nevis Island LLC and the $3.5 million sought by Davis in his motion to enforce the judgment." with "Although Davis agreed in April 2019 to invest $3.8 million in the Nevis Island LLC, in a response to a request for admission, he averred he actually invested $3.5 million in the entity in May 2019."

There is no change in the judgment.

The petition for rehearing is denied.

---

*COLLINS, Acting P. J.   CURREY, J.   STONE, J.**
**Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/13/22  Bagby v. Davis CA2/4 (unmodified opinion)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DOUGLAS A. BAGBY, | B320533 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC663174) |
| v. | |
| JOSEPH DANIEL DAVIS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed.

Law Offices of Douglas A. Bagby and Douglas A. Bagby, in pro. per., for Plaintiff and Appellant.

Nemecek & Cole and Frank W. Nemecek; Benedon & Serlin, Gerald M. Serlin and Mark Schaeffer for Defendant and Respondent.

## INTRODUCTION

Plaintiff Douglas Bagby appeals from the trial court's order denying a motion to enforce the amended judgment in favor of Bagby and against defendant Joseph Daniel Davis. We affirm and conclude that Bagby failed to follow the procedural mechanisms required to enforce the judgment.

## FACTUAL AND PROCEDURAL HISTORY

In May 2017, Bagby filed a complaint against Davis for legal malpractice and breach of contract based on Davis's representation of Bagby in a personal injury action. The complaint alleged that, as a result of Davis's failure "to comply with his legal and ethical obligations to [Bagby], [Bagby] sustained damages in excess of $5 million, or such other and further amount, as [would] be shown according to proof at . . . trial." When Davis failed to respond to the complaint, default was entered in August 2017. On September 25, 2018, the court entered a default judgment awarding Bagby $27,146,021.41. Davis appealed.

While the appeal from the default judgment was pending, on November 1, 2018, Bagby obtained an order to appear for examination (order to appear), which required Davis to appear in the trial court for a judgment debtor examination on March 13, 2019. On March 3, 2019, Davis was served with the order to appear. Davis did not appear on the original date of March 13, 2019, but sat for an examination on June 17 and 28, 2019.

In July 2017, Davis had formed Blue Globe Finance, LLC, a limited liability company located in Nevis in the Caribbean (hereafter the Nevis Island LLC). On April 30, 2019, Davis invested $3.8 million in the Nevis Island LLC.

2

On January 24, 2020, this court held that the default judgment was void to the extent it exceeded the $5 million demand in the complaint. (*Bagby v. Davis* (Jan. 24, 2020, B294081) [nonpub. opn.].) After vacating the default judgment, this court remanded the matter to the trial court to enter a new default judgment limiting Bagby's damages to $5 million, or vacate the default and permit Bagby to file and serve an amended complaint to seek additional damages. On remand, Bagby elected to accept the amended default judgment, and on July 23, 2020, the trial court entered the amended default judgment of $5 million in favor of Bagby and against Davis.

On August 13, 2020, Bagby recorded an abstract of judgment for the July 23, 2020 amended judgment in Riverside County, where Davis owned a real property located in Indian Wells (hereafter, Indian Wells property).

On February 7, 2022, Bagby filed a motion in Los Angeles County superior court to enforce the amended judgment, requesting that the trial court order (1) the sale of the Indian Wells property (including an order restraining Davis from transferring "furniture and furnishings and art" located in the residence) and (2) the return of $3.5 million[1] Davis had transferred to the Nevis Island LLC, outside the jurisdiction of United States courts.

At the hearing, the trial court denied the motion, concluding that it had "no authority to enforce the amended judgment in the manner sought by [Bagby], as [Bagby] has other legal remedies under the Enforcement of Judgment[s] Law [EJL] and the Uniform Voidable Transactions Act [UVTA] [Civil Code section 3439 et seq.]."

---

[1] The parties fail to explain the discrepancy between the $3.8 million transferred by Davis into the Nevis Island LLC and the $3.5 million sought by Davis in his motion to enforce the judgment.

## DISCUSSION

There is no dispute that Bagby has an enforceable (amended) judgment.  What is in dispute is the means by which Bagby moved to enforce the judgment.  On appeal, Bagby contends the trial court abused its discretion by failing to order (1) the sale of the Indian Wells property; and (2) the repatriation of $3.5 million Davis invested in the Nevis Island LLC after being served with the order to appear for his judgment debtor examination.  In opposition, Davis argues Bagby was required to follow the EJL to obtain an order of sale for the Indian Wells property.  In seeking the return of the $3.5 million, Davis argues Bagby was required to file a separate lawsuit asserting a UVTA claim.  We conclude the trial court acted within its discretion in denying Bagby's motion to enforce the amended judgment.

I.      *Sale of the Indian Wells Property*

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 (*Imperial Bank*).)  The EJL "is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Ibid.*; see Code Civ. Proc., §§ 680.010–724.260; 681.010, subd.(a).)[2]  Specifically, the execution of sales of real property is governed by the EJL. (§ 681.010, subd. (d); *Imperial Bank, supra,* at p. 546.)

After obtaining a money judgment, the judgment creditor creates a judgment lien by recording an abstract of judgment in the office of the county recorder of the county where the real property is located.  (§ 697.310, subd.

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

(a); see *Dang v. Smith* (2010) 190 Cal.App.4th 646, 651; *Meyer v. Sheh* (2022) 74 Cal.App.5th 830, 837.) "After obtaining a judgment lien, the creditor must take additional steps to collect on the judgment, and the usual method is to levy on specific property by writ of execution. [Citation.]" (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1320–1321.)

The judgment creditor obtains from the clerk of court[3] a writ of execution, directed to the sheriff or marshal in the county where the levy is to be made, to enforce the judgment. (§§ 699.510, 699.520.) The creditor delivers the writ to the levying officer with instructions including a description of the property to be levied upon. (§ 687.010, subd. (a)(1).) The officer levies on real property by recording a copy of the writ and a notice of levy with the county recorder "where the real property is located." (§ 700.015, subd. (a).) The levy creates an execution lien on the property. (§ 697.710.) Service of a copy of the writ and notice of levy on the judgment debtor triggers a 120-day grace period during which the debtor may redeem the property from the lien. (§ 701.545.) Only after this period expires may the levying officer then proceed to notice the property for sale. (§ 701.540 et seq.)

Additional steps are required where, as here, the judgment debtor asserts a "homestead exemption" with respect to the real property at issue.[4] When there is a homestead exemption claim, the judgment creditor is

---

[3]     "Court" here is defined as the court where the judgment sought to be enforced was entered. (§ 680.160.)

[4]     "Homestead" is defined as the "principal dwelling" where the judgment debtor or spouse resided on the date the lien attached to the dwelling and resided continuously thereafter until the date of the court determination that the dwelling is a homestead. (§ 704.710, subd. (c).) Davis asserted below that the homestead exemption applies, a contention Bagby vigorously disputes since he contends Davis moved to Florida and did not live in the home.

required to obtain a court order for sale after a noticed hearing before the real property can be sold. (See §§ 704.740, subd. (a), 704.770; *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 68; Ahart, Cal. Practice Guide: Enforcing Judgments & Debts (The Rutter Group 2022) ¶ 6:756.) In addition, if the real property "is located in a county other than the county where the judgment was entered: . . . [t]he judgment creditor shall apply to the superior court of the county where the [real property] is located." (§ 704.750, subd. (b)(1).) The main purpose of this hearing procedure is to determine whether the real property is subject to the homestead exemption, and to ensure that the debtor is paid the amount of the exemption if the property is sold. (See § 704.780, subd. (b); Ahart, *supra*, ¶ 6:756.)

Here, Bagby recorded an abstract of judgment on the Indian Wells property in Riverside County. Although that recording had the effect of creating a judgment lien on the property (§ 697.310, subd. (a)), it was only the first necessary step. Bagby has not followed any of the additional required steps under the EJL, such as obtaining a writ of execution and delivering it to the sheriff or marshal with instructions. Further, Bagby did not follow the statutorily mandated procedure in challenging the application of the homestead exemption on the property. In particular, he failed to bring the necessary proceeding in the superior court in Riverside County, where the Indian Wells property is located. (§ 704.750, subd. (b)(1).) Bagby provides no legal authority permitting him to circumvent the EJL in his request for a court order directing the sale of the property. Therefore, we conclude the trial court did not abuse its discretion in declining to order the sale of the property based on its finding that Bagby failed to comply with the EJL procedures for enforcing his money judgment against the property.

6

II.     *Davis's $3.5 Million Transfer to the Nevis Island LLC*

Bagby contends the trial court erred by failing to order Davis to obtain and repatriate the $3.5 million transferred to the Nevis Island LLC. We reject each of Bagby's bases for this claim.

First, Bagby argues Davis's transfer of the $3.5 million to the Nevis Island LLC violated the UVTA, Civil Code section 3439 et seq., which governs claims for fraudulent transfer. "The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt. [Citation.] A creditor may set aside a transfer as fraudulent . . . by showing actual fraud . . . or by showing constructive fraud . . . . [Citations.] As a remedy, the creditor may obtain avoidance of the transfer, an attachment or other provisional remedy, and, subject to applicable principles and rules, an injunction or a receiver. [Citation.]" (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 817, fn. omitted; see Civ. Code, §§ 3439.04, 3439.07.)

We agree with the trial court that Bagby was required to file a separate action alleging a fraudulent transfer under the UVTA in order to obtain the relief he requested. Civil Code section 3439.07, subdivision (a) provides that UVTA remedies are available for a fraudulent transfer "[i]n an action for relief" under that chapter. Contrary to his contention, Bagby's motion to enforce the amended judgment did not equate to an action, even though he invoked the UVTA as a ground for relief. The motion was filed within the original court case in which the judgment had been entered.

Generally, courts treat the term "action" as referring to the whole of a lawsuit rather than a discrete proceeding or motion within a suit. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752–756; *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 909; *Salawy*

7

*v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 672–674; *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298; see § 22 ["action" is defined as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense"]; § 411.10 ["civil action" commenced by filing complaint].) Thus, Bagby had to file a wholly separate action asserting a claim for fraudulent transfer under the UVTA or simply a common law cause of action for fraudulent transfer to obtain the requested relief.[5] (See *Nagel v. Westen* (2021) 59 Cal.App.5th 740, 745.)

Second, Bagby contends the April 30, 2019 transfer of the $3.5 million to the Nevis Island LLC was a violation of Bagby's lien rights. He contends this lien arose from the March 3, 2019 service on Davis of the order to appear for his judgment debtor examination. Under section 708.110, subdivision (d), service of such an order "creates a lien on the personal property of the judgment debtor for a period of one year from the date of the order unless extended or sooner terminated by the court."

Respondent contends that the order to appear was void because the original judgment was void, and thus no section 708.110, subdivision (d) lien (hereafter, 708.110(d) lien) was created. On January 24, 2020, this court held the original default judgment was void to the extent it exceeded the $5 million demand in the complaint. ""A void judgment is, in legal effect, no

---

[5] Relying on Civil Code section 3439.07, Bagby contends the trial court should have issued an order restraining Davis from transferring "furniture and furnishing and art" located in the Indian Wells property. Bagby cannot rely on this statute as it merely outlines the remedies available under the UVTA. In order to seek such remedies, he needed to file a separate action asserting a UVTA claim.

8

judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." [Citation.]'" (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240, quoting *Bennett v. Wilson* (1898) 122 Cal. 509, 513–514; see also *Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1136.) A judgment debtor examination is an enforcement proceeding to assist in enforcing a money judgment. (*Imperial Bank, supra,* 33 Cal.App.4th at pp. 546–547.) If the original default judgment was void, the 708.110(d) lien to enforce the original default judgment would likewise be void. (See *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 616 [because the judgment was void, "subsequent orders purporting to enforce the judgment [were] likewise void"].)

However, we agree with Bagby that the original default judgment was "void only to the extent it exceed[ed] the amount claimed in the complaint." (*Janssen v. Luu* (1997) 57 Cal.App.4th 272, 279; see § 580.) Because the default judgment was valid up to the $5 million demand in the complaint and thus not void in its entirety, the order to appear and resulting 708.110(d) lien flowing from that default judgment were not rendered void. (Cf. *Moore v. Kaufman, supra,* 189 Cal.App.4th at p. 616.)

That said, Davis correctly points out that the 708.110(d) lien expired on March 3, 2020, one year after Davis was served with the order. (See § 708.110, subd. (d).) Bagby then failed to apply for an extension of the lien. (*Ibid.*) Bagby did not move to enforce the lien until February 7, 2022. Bagby could not seek to enforce a lien that was no longer in effect.

We further note that Bagby misunderstands the purpose of the 708.110(d) lien. While this lien on a judgment debtor's personal property is automatically created by service of the order to appear, the statute "does not

9

specify which personal property is thereby encumbered, or whether the judgment debtor must have custody and control of the property." (*In re Burns* (9th Cir. BAP 2003) 291 B.R. 846, 851.) The 708.110(d) lien is merely created in anticipation of the trial court's identification of specific assets at the judgment debtor examination, and the court's subsequent orders or liens help the judgment creditor capture the debtor's assets, even those that may have been transferred to a third party. Thus, the lien is a tool to safeguard debtor's assets before a judgment debtor's examination proceedings, giving the creditor priority until the court makes post-examination orders to enforce the money judgment.

Contrary to Bagby's contention, the 708.110(d) lien did not prohibit the $3.5 million transfer to the Nevis Island LLC. Generally, property that falls within a 708.110(d) lien remains subject to the lien after it is transferred. (§ 697.920; see *In re Hilde* (9th Cir. 1997) 120 F.3d 950, 954.) Furthermore, the record indicates that these funds in fact remained within Davis's custody and control. Bagby has therefore failed to demonstrate any violation of his rights under this lien. Accordingly, the trial court did not err in denying Bagby's request to order the repatriation of the $3.5 million. As previously stated, Bagby must initiate a lawsuit alleging a claim for fraudulent transfer under the UVTA or common law claim for fraudulent transfer if he wishes to capture that asset.

//

//

//

//

//

10

**DISPOSITION**

The judgment is affirmed.  Davis is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STONE, J.*

We concur:


COLLINS, Acting P. J.


CURREY, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11