Filed 3/8/23  Regos v. Reed CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOHN REGOS et al., | B316267 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC710184) |
| v. | |
| JACKIE LYNN REED, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge.  Reversed.

Nordstrom, Steele, Nicolette and Blythe, Alan K. Nicolette for Plaintiffs and Appellants.

Derryberry & Associates, Alexander L. Massari for Defendant and Respondent.

————————————

## INTRODUCTION

This appeal raises the question of whether the wife of a deceased attorney has the right to continue to receive annuity payments in fulfillment of an attorney fees award that her husband procured in excess of the court's jurisdiction. Despite the passage of time, we conclude the answer is no.

## FACTS AND PROCEDURAL BACKGROUND

The facts necessary to resolve this matter are not in dispute.

### 1. Underlying case of *Regos v. Ransom*

In 2003, Mary Louise Ebanal[1] (then Regos) was separating from her partner Victor Ransom. With her minor children John Regos, Jr. and Jenifer[2] Regos, she went to the family home to remove her belongings. John Regos, Sr., who was her ex-husband and the father of her two children, assisted her. Ransom appeared and threatened Ebanal and John Regos, Jr. with a gun. When Regos Sr. approached, Ransom shot and killed him. Ransom is currently in prison for that murder.

Ebanal became the sole source of support for herself and her children. While working as a limo driver, she met attorney Brian Reed. Reed offered to represent her and her children in a wrongful death action against Ransom. Ebanal had no money to pay Reed for his services, and Reed told her that they would work that out later. Ebanal knew that Reed was not representing

[1] This name is spelled in various ways in the record. Because it is spelled "Ebanal" by appellants on appeal, we use that spelling.

[2] This name is also spelled differently in various parts of the record. Because it is spelled "Jenifer" by appellants on appeal, we use that spelling.

them for free. However, there was no written fee agreement for legal services between Reed and Ebanal or her children.

In 2003, Ebanal, John Regos Jr. and Jenifer Regos (the *Regos* plaintiffs) filed a wrongful death action against Ransom. Reed represented the plaintiffs. The complaint stated claims against Ransom for wrongful death, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress.[3] The complaint sought compensatory and punitive damages, but did not seek attorney fees, or set forth any statutory basis for attorney fees.

Ransom defaulted in that action. Reed prepared a default judgment packet and proposed judgment against Ransom. The only evidence offered in support of the proposed judgment were declarations by each plaintiff. Nothing was presented that related to Reed's entitlement to fees.

In 2004, the trial judge held a default prove-up and according to the resulting minute order, awarded the following: (a) compensatory damages of $1 million to each minor plaintiff and $350,000 to Ebanal; (b) punitive damages of $100,000 to John Regos, Jr., $75,000 to Jenifer Regos, and $50,000 to Ebanal; (c) restitution; and (d) $524.50 for "costs plus attorney fees."

Reed then submitted a proposed judgment. The judgment included the following language: "the Court finds that counsel for the Plaintiffs shall receive 25 [percent] of all sums received by each minor as and for attorneys' fees and an amount equal to 33 1/3 [percent] plus costs from all amounts received by Mary Louise Regos, as an individual."

---

[3] A fifth claim against the County of Los Angeles for failure to provide police services was dismissed after demurrer.

The judgment was signed and filed on November 22, 2004. Reed timely advised the plaintiffs of the terms of the judgment and they did not express disagreement. The judgment was renewed by Reed on November 21, 2014.

**2. The annuity and enforcement of the judgment**

The only asset that Ransom possessed from which he could pay the judgment was a monthly annuity that he had been awarded prior to the events leading to the wrongful death action. Prior to their separation, Ebanal and Ransom had been in an auto accident. The resolution of that case resulted in a structured settlement whereby Ransom was to receive a $2,000 monthly annuity payment for the rest of his life.

After the judgment in *Regos* was entered, the court approved a stipulation between the *Regos* plaintiffs and Farmers New World Life and Farmers Services Company (collectively, Farmers) to permit the *Regos* plaintiffs to enforce their judgment through Ransom's $2,000 monthly annuity payment. That stipulation was entered into by Reed on behalf of the *Regos* plaintiffs and by an attorney who represented Farmers. None of the plaintiffs signed that stipulation.

Paragraph 2 of that stipulation and order was altered by interlineation. The original language read as follows: "Intervenors/Defendants will pay the $2,000 monthly payments by check payable to Brian E. Reed, John Louis Regos, Jr., Mary Louise Regos, individually and as guardian ad litem, for Jenifer Louise Regos and shall mail the check to Brian E. Reed."

The interlineation struck out the names of the payees and replaced the payee with "Brian E. Reed Trust Account." It further added a sentence at the end of that paragraph as follows:

4

"Mr. Reed will then distribute the sums received to the plaintiffs and shall receive his attorney's fees from each payment." Only the attorneys initialed the interlineations. The stipulation was signed as an order of the court on September 22, 2005.

Reed timely advised the *Regos* plaintiffs of this arrangement and they did not express disagreement with it.

### 3. The current dispute and interpleader

For more than 12 years thereafter, Farmers sent the $2,000 monthly annuity check to Reed, and Reed deducted $500 from each such payment, passing the remainder on to the *Regos* plaintiffs.[4]

Reed died in March 2017.[5]

After Reed's death, his widow, Jackie Lynn Reed, wrote to Farmers to inform them that her husband had died. Unable to cash the checks made out to her husband's trust account, she returned three of the garnishment checks that had been received after her husband's death and sought reissuance of the checks in her name. Farmers declined to do so without proof of her entitlement as a successor or a court order. Farmers also declined to pay any amount directly to the *Regos* plaintiffs.

---

[4] It is undisputed that Reed took a flat 25 percent of the monthly annuity, despite the judgment's provision that he was entitled to take 33.3 percent of the proceeds that were received by one of the three plaintiffs; namely, Ebanal.

[5] The parties also stipulated that Reed was on inactive status as of November 2015. Although the *Regos* plaintiffs argued that this made him ineligible for further attorney fee payments as of that time, the trial court rejected this argument, finding that he fully earned his fee award when he performed the services in the *Regos v. Ransom* case in 2004 and 2005.

5

In June 2018, the three *Regos* plaintiffs (all of whom were now adults) filed a complaint for declaratory relief against Jackie Lynn Reed and Farmers as well as damages for conversion against Farmers. They claimed that the entirety of the $2,000 annuity payments should now be paid to them and that Jackie Lynn Reed had no right to payments as her husband's successor. They did not challenge or seek to disgorge the payments that had already been made to attorney Reed. They sought relief in the form of "a declaration of the parties' respective duties, rights, and responsibilities concerning the $2000/month Ransom annuity payments" and "modification of the September 22, 2005 [o]rder to require that the $2000/month Ransom annuity payments be made directly to [p]laintiffs."

Farmers then filed a cross-complaint in interpleader against the *Regos* plaintiffs and Jackie Lynn Reed. Farmers admitted that it owed $2,000 per month but alleged that the cross-defendants' respective claims were adverse and conflicted with the 2005 Stipulation and Order requiring the check to be made payable to the Brian Reed trust account.

Reed then filed her cross-complaint against the *Regos* plaintiffs, alleging a single cause of action for declaratory relief. In that cross-complaint, Jackie Lynn Reed asserted her right to 25 percent of all sums awarded to each minor and 33 1/3 percent of the sums awarded to Mary Louise Regos, for a total of $685,250 in attorney fees. After providing credits for sums paid to Reed pursuant to the stipulation in the amount of $500/month, she claimed to still be owed "more than $600,000." She sought in her prayer for relief that each future annuity payment of $2,000 be awarded in its entirety to her husband's estate until that debt was satisfied.

6

The claims against Farmers were resolved and Farmers was dismissed from the litigation, still waiting for instructions on whom to pay the interpleaded funds.

The matter came on for bench trial in June 2021 as between the *Regos* plaintiffs and Jackie Lynn Reed. No live testimony was taken; the parties submitted stipulated facts, testimonial evidence by way of declarations, and referred to or incorporated prior declarations filed in either this case or in the prior *Regos* action which the court accepted into evidence.

The trial court ruled in favor of Jackie Lynn Reed. It found that although there was no written attorney fee agreement that would support an award of contingency fees, the court during the default action must have intended to award the fees to Reed on a quantum meruit basis. The court further concluded that even if the prior judge had no legal authority to make the award, the judgment should have been timely challenged by means of a motion for reconsideration, motion to vacate, or an appeal. Finally, the court concluded that the 13-year delay between the date of the default judgment and the date the *Regos* plaintiffs filed their complaint was "fatal" to their claims under the doctrine of laches.

This appeal followed.

## DISCUSSION

### A. Standard of review

This case involves the interplay between various methods of challenging a judgment, entitlement to attorney fees in the absence of a written agreement, and the equitable doctrines of laches.

We agree with appellants that the standard of review here is de novo. (*International Engine Parts, Inc. v. Fedderson & Co.*

7

(1995) 9 Cal.4th 606, 611 [where the relevant facts are not in dispute, we review the application of law to those facts as a question of law, and hence, de novo]; *Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1274 ["Laches is a question of fact for the trial court, but may be decided as a matter of law where, as here, the relevant facts are undisputed"].)[6]

## B. The *Regos* plaintiffs are entitled to declaratory relief

### 1. That portion of the 2004 judgment regarding attorney fees is void because the court lacked jurisdiction

The *Regos* plaintiffs' fundamental argument on appeal, as it was below, is that the original award of attorney fees in the 2004 judgment was void because the court had no jurisdiction to make that award.  As the fee award was void, they contend, the subsequent stipulation and order that purported to grant attorney Reed the ability to receive his attorney's fees from each payment was also void.

We agree.  The California Supreme Court has consistently held that a judgment is void to the extent that a court lacks jurisdiction.  (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 [a judgment is void when the court "lack[s] fundamental

---

[6] Respondent does not dispute that this is the proper standard of review.  (Cf. *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 ["appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited"].)

authority over the subject matter, question presented, or party"];
*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950 ["Collateral
attack is proper to contest lack of personal or subject matter
jurisdiction or the granting of relief which the court has *no power*
to grant"]; *Olivera v. Grace* (1942) 19 Cal.2d 570, 574 ["a court
has inherent power, apart from statute, to correct its records by
vacating a judgment which is void on its face, for such a
judgment is a nullity and may be ignored"].)[7]

The jurisdictional error in this case was to provide relief to
a nonparty (attorney Reed) regarding a matter that was never
put to it (the fee award).

" 'A judgment in favor of a person who is not a party to the
action is obviously beyond the authority of the court' and hence is
void." (*Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 615; 2
Witkin, Cal. Procedure (6th ed. 2022) Jurisdiction, § 331, p. 937.)

In *Overell v. Overell* (1937) 18 Cal.App.2d 499 (*Overell*), a
very similar fact pattern to the case at bar was presented. In a
quiet title action, a judgment was entered which included a

_____

[7] The *Regos* plaintiffs contend that the award of attorney fees was
a clerical error that can be corrected nunc pro tunc. We disagree.
" 'The distinction between clerical error and judicial error is
"whether the error was made in rendering the judgment, or in
recording the judgment rendered." ' " (*Ukegawa Brothers v.
Agricultural Labor Relations Bd.* (1989) 212 Cal.App.3d 1314,
1318.) Here, it appears from the minute order that the judge did
render a decision for "costs plus attorney fees." The judgment
then fleshed out in more detail the fees that were owed. Thus, we
find the case of *Estate of Goldberg* (1938) 10 Cal.2d 709, 715–716,
cited by Ebanal, inapplicable. Instead, however, we find the
error to have been a judicial one that led to a partially void
judgment.

9

provision that plaintiff's attorney was entitled to 25 percent of the amounts recovered on behalf of the plaintiff as well as 25 percent of some other items of property.

The court agreed with the client that this provision was void, noting: "The judgment purports to adjudicate and establish the rights of the attorney under the agreement as against his client. This, of course, could have been done only after the trial of an action in which the parties to the agreement had been given an opportunity to present their respective demands and . . . defenses. . . . It could not be done *ex parte* nor in a summary manner. . . . One who is not originally a party can become a party only by order of court upon proper application. [Citation.] A judgment must be confined to matters which have been placed in issue by the parties and those which are necessarily involved." (*Overell, supra*, 18 Cal.App.2d at pp. 502–503.) The court concluded that while any fee dispute could undoubtedly have been resolved in a separate action, there was nothing in the judgment roll to show "even remotely, that the court had jurisdiction to render any judgment as between [client] and her attorney." (*Id.* at p. 503; accord *Wong v. Superior Court* (1966) 246 Cal.App.2d 541, 546 ["Attorney Wong is not a party to the action. 'It is the general rule that a judgment may not be entered either for or against a person who is not a party to the proceeding, and any judgment which does so is void to that extent.' "]; *Moore v. Kaufman, supra,* 189 Cal.App.4th at pp. 614–616 [judgment requiring attorney to pay other party's attorney fees was void where attorney was not a party to the action and in the absence of statutory authority].)

In *Bandy v. Mt. Diablo Unified School Dist.* (1976) 56 Cal.App.3d 230, a discharged attorney filed a motion for attorney

fees and a lien for fees and costs advanced in his former client's underlying case. After a hearing, the court granted the attorney's motion. On appeal, the court reversed, finding that an attorney's lien against the prospective recovery of a client upon his claim "must be enforced . . . in an independent action by the attorney against the client and the attorney has no right to intervene in the main action to which he is not a party." (*Id.* at p. 234.) The court found that the judgment granting the attorney fees made in the main action was therefore void. (*Ibid.*)

Here, attorney Reed was not a party to this action, nor did he ever file any motion or petition for attorney fees – even assuming that he had a statutory basis to do so. As in *Overell*, the judgment is void to the extent it "purports to adjudicate and establish the rights of the attorney under the agreement as against his client" without notice and an opportunity for both parties to present their respective demands and defenses. (*Overell, supra,* 18 Cal.App.2d at p. 502.) "Due process of law does not permit an attorney to step out of his fiduciary role temporarily and obtain a judgment for his own benefit against his client." (*Wong v. Superior Court, supra,* 246 Cal.App.2d at p. 549.)

In addition to lacking jurisdiction over a *nonparty*, the court also lacked jurisdiction over the *issue* of the distribution of the proceeds between plaintiffs and their lawyer.

In *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, the court held that a judgment is void when the court grants relief beyond its authority to grant. There, the judgment was found void because the trial court had no power to grant relief as to any tax payment for which there was not a timely claim for refund. (*Id.* at p. 36; see also *Heidary v.*

11

*Yadollahi* (2002) 99 Cal.App.4th 857, 862–864 [judgment void when the court had no power to order entry of default when defendants failed to appear for trial despite being served].)

In the context of default judgments, Code of Civil Procedure section 580 provides that the "relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . [or in a statement of damages]." (Code Civ. Proc., § 580.) A default judgment entered in violation of that statute is void " 'because it is beyond the court's jurisdiction to enter.' " (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 798.)

Relying on Code of Civil Procedure section 580, our Supreme Court has held that a judgment was void where, among other things, it awarded $2,500 in attorney fees where attorney fees were not included in the prayer for relief. (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 491, 495.)

Many cases have come to the same conclusion. (*Burtnett v. King* (1949) 33 Cal.2d 805, 807 [judgment void where court "wholly lacked jurisdiction to render a judgment affecting the community property, for there was no demand for such relief"]; see also *Swycaffer v. Swycaffer* (1955) 44 Cal.2d 689, 693 [default judgment that exceeds the demand or gives relief where no demand is made therefor is void].)

Moreover, if the judgment is only partially void, and the void part is severable, that part alone may be collaterally attacked, and the remainder will remain effective. (*Becker v. S.P.V. Construction Co., supra*, 27 Cal.3d at p. 495 [remanding case to the trial court with directions to modify the judgment by striking the attorney fees].)

Here, there was no basis for attorney fees set forth in the prayer for relief, the request for default, and no motion or

12

petition for attorney fees was ever filed. Accordingly, the court awarded relief in excess of its jurisdiction.

For all these reasons, we agree with the *Regos* plaintiffs that the portion of the judgment awarding a percentage to Reed was void.

## 2. The attorney fee award cannot be justified as a determination of quantum meruit

The trial court concluded that even though there was no request made for attorney fees in the *Regos v. Ransom* matter, and no evidence of how much the attorney should have received in the absence of any written contingency agreement, the provision in the judgment was a valid "quantum meruit finding" by the original *Regos v. Ransom* judge, as he "was in the best position to determine the value [of] that work." Upon closer examination, this conclusion does not withstand scrutiny for the same reasons as described above.

The general principles applicable to enforcement of an attorney's fee in the absence of a written agreement are not in dispute. "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.)

California law sets forth several requirements for an attorney to represent a client on a contingency fee basis. As relevant here, Business and Professions Code section 6147, subdivision (a) requires that the contract be in writing; that it include a statement of the contingency fee rate that the attorney and client have agreed on; that it state how disbursement and costs will affect the client's recovery; and that it states that the

13

fee is not set by law but is negotiable between the attorney and the client. (*Ibid.*) Failure to comply with any provision of this section renders the agreement voidable[8] at the option of the client, and the attorney shall thereupon be entitled to collect a reasonable fee. (Bus. & Prof. Code, § 6147, subd. (b).)[9]

However, while it is true that an attorney is entitled to quantum meruit in the absence of a valid written contingency fee agreement, that dispute must be squarely raised and adjudicated, and cannot be decided *sub silentio* by approving a default judgment in which the issue was never mentioned in any pleadings.

"[W]hen legal services have been provided without a valid written fee agreement, the attorney may recover the reasonable value of the services she performed in the action pursuant to a common count for quantum meruit." (*Leighton v. Forster* (2017) 8

---

[8] Voidable is distinct from void: A voidable act may be rendered null at the option of the wronged party, but is not void until so entered. (*Depner v. Joseph Zukin Blouses* (1936) 13 Cal.App.2d 124, 127; *White Dragon Productions, Inc. v. Performance Guarantees, Inc.* (1987) 196 Cal.App.3d 163, 172 [same].)

[9] There is no statute of limitations or other "timeliness component" for a client who seeks to void an agreement that fails to comply with section 6147. (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 576.) It may be voided before or after services are provided. (*Alderman v. Hamilton* (1988) 205 Cal.App.3d 1033, 1038 [clients waived their right to void the entire contract by agreeing to pay the contingency relating to one part of their case but exercised their right to void it when they denied that the contract was enforceable and refused to pay any more to attorney for a different issue].)

14

Cal.App.5th 467, 490.) There is a two-year statute of limitations, which commences on either the date the last payment was made toward the attorney fees, or the last date that the attorney performed services in the case. (*Ibid.*) A claim for quantum meruit is considered an action at law, not in equity. (*Chodos v. Borman* (2014) 227 Cal.App.4th 76, 97.) The parties to a quantum meruit claim have a right to a jury trial. (*Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 907.)

For that reason, disputes as to the appropriate amount owed under quantum meruit involve cases between the attorney and the client. (See, e.g., *Wiley v. Silsbee* (1934) 1 Cal.App.2d 520, 521–522 [in case brought by attorney against former client, attorney was entitled to quantum meruit even though their contract was void as against public policy]; *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 996 [in case brought by attorney against former client, contract was unenforceable because not in writing; an action will lie upon a common count for quantum meruit and two year statute of limitations applies].)

Jackie Lynn Reed argues first, that attorney Reed was entitled to recover fees under a quantum meruit analysis, and second, that the case of *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*) provides a basis to hold that the clients here should not able to cut off the attorney's fee award despite the lack of a written fee agreement.

As to the first argument, as noted above, Reed was certainly entitled to seek his fees in quantum meruit by filing an action and supporting his claim with appropriate evidence. (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th

257, 272 [setting forth factors to be considered in awarding fees in quantum meruit action].) He did not do so.

As for *Flannery*, the case is inapposite. In that case, the California Supreme Court held that, in the absence of an enforceable agreement to the contrary, any attorney fees obtained under Government Code section 12965 (the Fair Employment and Housing Act) belong to the attorney, not the client. In that case, a client brought an action against her attorneys seeking a judicial declaration that she was entitled to the statutory attorney fee awarded in an earlier action. (*Flannery, supra,* 26 Cal.4th at p. 576.) In the earlier action, a motion for statutory attorney fees had been filed in the original action for employment discrimination on the grounds of both Government Code section 12965 as well as Code of Civil Procedure section 1021.5, which resulted in a fee award payable by the defendant. (*Flannery,* at p. 576; see also *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 632 ["Plaintiff moved for attorney fees and expenses"].) The fees were then put at issue in a subsequent case brought by client against the attorney. (*Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th at p. 632.) The only dispute in that second action was whether the fees belonged to the client or the attorney in the absence of an agreement.

Here, by contrast, there was no attorney's fee award requested in the underlying action, nor was there ever a proceeding between attorney and client in which the issue of division of the proceeds or entitlement to fees was ever litigated (until these declaratory relief actions were filed). Again, while Reed surely would have had a strong case for quantum meruit

16

had he ever filed one, he did not.[10]  The trial court below erred by finding that the fee award could stand despite this fundamental flaw.

## C. The *Regos* plaintiffs' challenge was not untimely

Respondent's brief comes close to conceding the impropriety of the initial fee award but leans heavily on the trial court's finding that any challenge is time-barred.  We disagree.

### 1. A challenge to a void judgment can be brought at any time

As the lower court held, the *Regos* plaintiffs' attack on the 2004 judgment was brought long after the statutory periods set forth in many if not all modes of direct attack, whether a motion for reconsideration (Code Civ. Proc., § 1008 [10 days]); a motion to vacate for relief from default (Code Civ. Proc., § 473, subd. (b) [six months]; but see § 473, subd. (d))[11]; or an appeal (Cal. Rules of Court, rule 8.104 [generally 60 days].)

---

[10] The *Regos* plaintiffs are not seeking return of the approximately $80,000 received by Reed prior to his death.  As the matter is not presented to us, we do not opine as to attorney Reed's estate's ability to obtain a quantum meruit award or what that amount might be.

[11] Some courts have held that a motion brought under Code of Civil Procedure section 473, subdivision (d), which provides that the court may "on motion of either party after notice to the other party, set aside any void judgment or order" may be brought after the normal six-month period set forth in subdivision (b) where a judgment was void because the court lacked jurisdiction.  (*Sindler v. Brennan* (2003) 105 Cal.App.4th 1350, 1353.)

However, the court below erred when it concluded that because those statutory periods had passed, it lacked the power to vacate or change a judgment issued by another trial court. "When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' "[12] (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660; *Plaza Hollister Ltd. Partnership v. County of San Benito, supra*, 72 Cal.App.4th at p. 19 [" 'a judgment or order which is void on its face, and which

---

[12] For purposes of this appeal, we need not delve into the complex distinction between a collateral or direct attack on a judgment, referred to by one commentator as "one of the most obscure areas of procedural law." (Comment, *The Value of the Distinction Between Direct and Collateral Attacks on Judgments* (1957) 66 Yale L.J. 526.) Suffice it to say that under California law, a direct attack is a proceeding instituted for the specific purpose of vacating or reversing a judgment such as by a motion for new trial or appeal; it is the only method for attacking a judgment which, no matter how erroneous it may be, was within the jurisdiction of the court. (8 Witkin, Cal. Procedure (6th ed. 2022) Attack on Judgment in Trial Court, §§ 1–2, pp. 584–585.)

By contrast, a collateral attack is made not in a proceeding brought for the specific purpose of attacking the judgment, but in some other proceeding in which the judgment comes up only incidentally; in such a proceeding the judgment may be challenged only if it is so completely invalid as to require no ordinary review to annul it. (8 Witkin, Cal. Procedure (6th ed. 2022) Attack on Judgment in Trial Court, §§ 6–7, pp. 590–591.) "A motion to vacate or set aside the judgment, if made after the statutory time has elapsed for direct attack by motion, or if made on grounds or under a procedure not authorized by the statutes governing direct attack, is a collateral attack." (*Id.* at § 8, pp. 592–593.)

requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion, at any time after its entry, by the court which rendered the judgment or made the order' "];[13] *Wells Fargo & Co. v. City and County of San Francisco* (1944) 25 Cal.2d 37, 40 ["a motion to vacate a judgment, made after the expiration of the six-month period allowed in section 473 of the Code of Civil Procedure for a motion to set aside a default judgment, is governed by the rules applicable to collateral attack. [Citations.] In the absence of extrinsic fraud or mistake [citation] a judgment so attacked cannot be set aside unless it is void on its face"].)

Given the viability of challenging a void judgment as described above, the cases cited by the court are simply not on point. (*In re Alberto* (2002) 102 Cal.App.4th 421, 426–427 [one judge should not correct another judge's prejudgment orders]; *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 630–631 [one judge should not grant motion to set aside default judgment when a prior judge had already rejected an prior request to set it aside, alleging the same basis for relief, which was then pending on appeal at the time the second motion was filed]; *Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060, 1070 [trial court erred in vacating, on its own motion, a prior judge's order sealing the record, during the proceedings].)

---

[13] The judgment roll in a civil action where judgment was entered by default, as occurred here, is defined as: the summons, proof of service, complaint, the request for entry of default, and the judgment. (Code Civ. Proc., § 670, subd. (a).)

Here, we conclude that the attorney's fee portion of the judgment is void on the face of the record (i.e., by reference to who the parties were and what relief was sought as set forth in the judgment roll) and hence could be challenged at any time.

## 2. The court erred in concluding that laches barred relief for the *Regos* plaintiffs

The trial court here held that "the thirteen-year delay Plaintiffs waited to assert their objections is fatal to their current claims. . . . Laches may be found where there is 1) an omission to assert a right; 2) a delay in assertion of that right for some applicable period, and 3) circumstances which would cause prejudice to an adverse party if assertion of the right is permitted. (*Stafford v. Ballinger* (1962) 199 Cal.App.2d 289, 296.) All elements are met in this matter. Plaintiffs accepted the payment arrangements under the 2004 Judgment and the Stipulation and refrained from asserting their objections for 13 years."

The affirmative defense of laches requires "unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' " (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.)[14]

_____

[14] Although some cases omit the word "unreasonable" when stating the delay prong, analysis of those cases shows that the delay was in fact found to be unreasonable. In *Stafford*, for example, the party who delayed filing a claim had both full knowledge that the other part refused to complete the sale (the basis for his claim) and also had no disability; thus, the court held there was no reason not to enforce the statute of limitations. (*Stafford v. Ballinger, supra,* 199 Cal.App.2d at p. 295.)

However, laches does not apply when a judgment is void. In an action seeking to vacate a judgment which is void for lack of jurisdiction of the court to enter it, the judgment is "for all purposes a nullity" in that regard. (*City of Los Angeles v. Morgan* (1951) 105 Cal.App.2d 726, 732.) Accordingly, "neither laches nor the ordinary statutes of limitation may be invoked as a defense." (*Ibid.*) "Prejudice is not a factor" when a challenged order is void. (*Sindler v. Brennan, supra*, 105 Cal.App.4th at p. 1354; see also *Sugimoto v. Exportadora de Sal, S.A. de C.V.* (1991) 233 Cal.App.3d 165, 170 ["Prejudice is irrelevant to the issue of jurisdiction"].)

Since we conclude that this judgment was in fact void, laches may not be invoked as a defense at all, regardless of any prejudice.

Even if laches were a defense in this case, though, the finding of laches could not be upheld. While some cases define unreasonable delay as delay which results in prejudice (see *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 142), most focus either implicitly or explicitly on whether a party's delay was otherwise justifiable or not attributable to that party. (See, e.g., *Potter v. Contra Costa Realty Co.* (1934) 220 Cal. 31, 34 [delay in asserting rights justified when the defaulting party represented he would make good his default]; *Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 286, fn. 5 [comment in Restatement of Judgments § 129 subd. (b) explains that establishing a defense of laches requires not merely a " 'lapse of time' " but a showing that the party seeking relief has been " 'unreasonable in his delay after learning the facts' "].)

When the delay is due to the conduct of another party – in particular, the opposing party in the litigation – the party

21

causing the delay cannot take advantage of its own conduct by raising the defense of laches.  (See *Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist., supra*, 145 Cal.App.4th at p. 1275 ["The District may not now complain the temporary employees waited too long to assert a right the District misled them into believing they had already given up.  [Footnote.] 'One who comes into equity must come with clean hands.' "].)

Laches is even less likely to apply when a party was prevented from learning all the relevant facts by a fiduciary, such as one's attorney.  "[A] fiduciary has a duty to make a full and fair disclosure of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require investigation may not excite suspicion." (*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 559–560.)  In such a case, "a plaintiff need not disprove that an earlier discovery could have been made upon a diligent inquiry but need show only that he made an actual discovery of hitherto unknown information within the statutory period before filing the action." (*Id.* at p. 563; see also *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 667 ["A plaintiff who has no duty to inquire because of a fiduciary relationship does not need to show that he or she could not have discovered the facts earlier with a diligent inquiry"].)

Attorney Reed was a fiduciary of the *Regos* plaintiffs.  Given his duty to make a full and fair disclosure of all facts which materially affected his client's rights, the *Regos* plaintiffs are not obligated to prove that they could have earlier discovered that the attorney's fee award was void.  They brought their action within 15 months after Reed passed away and once his widow made known her position on her entitlement to the attorney fees, presumably with advice from a new attorney.  Thus, even if

22

laches were a defense to an attack on a void judgment, the court erred in finding that laches should bar the plaintiffs' claims in the unusual circumstances presented here.

## DISPOSITION

The judgment is reversed with directions to enter judgment in favor of John Louis Regos, Jr., Jenifer Regos, and Mary Louise Ebanal on the first cause of action of their complaint against Jackie Lynn Reed, including the declaration that they alone are entitled to receive 100 percent of the $2,000 monthly annuity payments since the date of Brian Reed's death and going forward, and against Jackie Lynn Reed on her cross-complaint. The court is further ordered to modify the September 22, 2005 order to provide payment directly to appellants. The appellants are entitled to their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

RICHARDSON (ANNE K.), J.*

WE CONCUR:

LAVIN, Acting P.J.

EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.