[No. B206679. Second Dist., Div. One. Oct. 22, 2010.]

SHEILA G. MOORE, Plaintiff, v.
BARRY B. KAUFMAN, Defendant and Respondent;
FRANCES L. DIAZ, Movant and Appellant.

[No. B222125. Second Dist., Div. One. Oct. 22, 2010.]

FRANCES L. DIAZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BARRY B. KAUFMAN, Real Party in Interest.

COUNSEL

Frances L. Diaz, in pro. per., for Movant and Appellant and for Petitioner.

No appearance for Respondent.

Waxler ◆ Carner ◆ Brodsky, Andrew J. Waxler; Greines, Martin, Stein & Richland and Kent L. Richland for Defendant and Respondent and for Real Party in Interest.

OPINION

ROTHSCHILD, J.—Frances L. Diaz petitions this court for relief from an order of the superior court finding her in contempt for refusing to comply with an order to answer questions at a judgment debtor examination. The underlying judgment awarded attorney fees against both Diaz and her then client Dr. Sheila G. Moore, jointly and severally, after a special motion to strike Moore's complaint was granted. We hold that the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16) does not authorize an award of attorney fees against plaintiff's counsel.[1] Because the underlying judgment is therefore void as to Diaz, we grant the petition.

## BACKGROUND

This case has a long appellate history. Below is a summary of the portions of that history that are relevant to analysis of the present proceeding.

Diaz represented Dr. Sheila G. Moore in a lawsuit filed against Barry B. Kaufman in April 2000. Moore voluntarily dismissed the suit without prejudice but, one year later, succeeded in vacating the dismissal and having the action reinstated.

Kaufman filed a special motion to strike Moore's complaint pursuant to section 425.16 and also filed a motion for sanctions. The two motions were calendared to be heard on September 7, 2001.

With respect to the special motion to strike, Kaufman's notice of motion sought an award of attorney fees against both Moore and Diaz, and that request was repeated in the conclusion of Kaufman's memorandum of points and authorities in support of the motion. The request for an award against Diaz, however, appeared nowhere else in Kaufman's motion papers. The

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

body of Kaufman's memorandum of points and authorities contained no argument or authority in support of an award against Diaz. Diaz's opposition failed to argue against such an award, presumably because Kaufman had presented no arguments for Diaz to rebut.

Kaufman's motion for sanctions shed further light on his special motion to strike. Kaufman's notice of motion under the anti-SLAPP statute stated that the request for an award of attorney fees against both Moore and Diaz was based on section 425.16 "and the Court's inherent discretionary powers." But in his request for sanctions, Kaufman expressly conceded that "California courts have no inherent power to impose monetary sanctions against parties or their counsel." Thus, when read together, the sanctions motion and the special motion to strike amounted to a concession by Kaufman that, apart from his request for sanctions (which was based on *other* statutes but not on the anti-SLAPP statute), Kaufman's only basis for an award of attorney fees against Diaz was the anti-SLAPP statute. But, again, Kaufman's memorandum of points and authorities in support of the special motion to strike never argued that the anti-SLAPP statute authorized such an award.

At the September 7 hearing, the court indicated that it intended to grant the anti-SLAPP motion and to deny the request for sanctions. Having been apprised of the court's tentative ruling, Kaufman's counsel explained that one of the reasons he filed a separate request for sanctions was that there might not be authority for an award of attorney fees against Diaz under the anti-SLAPP statute. The court responded by reiterating its intention to deny the request for sanctions. The court did not state an opinion concerning the propriety of an award against Diaz under the anti-SLAPP statute, but nothing the court said at the hearing gave any indication that the court intended to grant such an award. And given Kaufman's counsel's express acknowledgement that the propriety of such an award was questionable, counsel's failure to include *any* arguments on the issue in his memorandum of points and authorities was tantamount to a waiver of the issue.

Although the court never orally indicated any intention to depart from its tentative ruling, the court signed an order prepared by Kaufman's counsel that said the special motion to strike was granted "in its entirely [*sic*]," which could be interpreted as granting the request for an award of fees against Diaz. The court also signed a judgment prepared by Kaufman's counsel that awarded attorney fees and costs against Moore and Diaz jointly and severally, leaving the amounts blank. Moore appealed from the judgment, but Diaz did not.[2]

---

[2] An individual who is aggrieved *only* by a judgment's award of attorney fees in an unspecified amount may wait for the court to issue an order determining the amount of the award, and then appeal from that order. (*P R Burke Corp. v. Victor Valley Wastewater*

On October 5, 2001, Kaufman filed a memorandum of costs, which stated that the amount of attorney fees sought was "To be determined." On November 5, 2001, Kaufman filed a motion for attorney fees. The notice of motion sought an award of attorney fees and costs against Moore alone. It did not mention Diaz. The notice of motion asserted that the anti-SLAPP statute "empowers the [c]ourt to assess attorneys fees and costs against Moore" and explained that "[t]he purpose of this [m]otion is to fix the amount that Moore should pay for attorney's fees so that the September 7, 2001 [j]udgment can be amended accordingly." In seeking an amendment of the judgment to reflect "the amount that Moore should pay," the motion gave no indication that it sought determination of an amount for which Moore *and Diaz* would be jointly and severally liable. On the contrary, to anyone familiar with the terms of the judgment, Kaufman's motion appeared to seek an *amendment* of the judgment that would hold Moore alone liable for the attorney fees that Kaufman sought.

When the motion was heard on November 26, the court ruled that the motion should be granted but that Kaufman could recover only fees incurred in connection with the special motion to strike, not fees for the entire litigation. The court directed Kaufman to refile the motion in a manner that properly segregated the fees connected to the special motion to strike.

On December 14, 2001, Kaufman refiled the motion as directed. Again, his notice of motion sought an award of attorney fees against Moore alone. It did not mention Diaz. Again, the notice of motion stated that the anti-SLAPP statute "empowers the [c]ourt to assess attorneys fees and costs against Moore" and explained that "[t]he purpose of this [m]otion is to fix the amount that Moore should pay for such attorney's fees and for costs, so that the September 7, 2001 [j]udgment can be amended accordingly." Again, to anyone familiar with the terms of the judgment, the motion seemed to seek an amendment of the judgment to hold Moore alone liable for the attorney fees and costs that Kaufman sought.

The trial court heard the refiled motion on January 8, 2002. The court granted the motion, awarding $39,596.25 in attorney fees and $1,627.50 in costs. At the hearing, neither the court nor counsel for any party said anything about an award of fees against Diaz. That was understandable, because Kaufman's motion had sought an award against Moore alone. The court's

---

*Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053–1055 [120 Cal.Rptr.2d 98].) On that appeal, the individual can challenge not only the amount of the award but also the opposing party's entitlement to any award at all. (*Ibid.*) In *Moore v. Kaufman* (Feb. 3, 2005, B165018) (nonpub. opn.), we criticized Diaz for failing to appeal from the judgment. That criticism does not constitute the law of the case because the point was unnecessary to our decision. (*People v. Shuey* (1975) 13 Cal.3d 835, 842 [120 Cal.Rptr. 83, 533 P.2d 211].)

minute order, however, did not expressly provide that the award was against Moore alone—it did not specify whether the award was against Moore, Diaz, or both. The minute order did, however, command Kaufman's counsel to prepare a formal order for the court's signature.

Kaufman's counsel never complied with that order. Had counsel done so, the signed order might have clarified whether the award was against Moore, Diaz, or both. In the absence of such a clarification, it is doubtful that Diaz could have appealed from the trial court's January 8, 2002, minute order. Kaufman's motion sought only an award against Moore. The court's minute order granted the motion. Nothing in the motion, the transcript of the hearing on the motion, or the minute order granting the motion gives any indication that the award was against Diaz. Had Diaz attempted to appeal from the minute order, her appeal might well have been dismissed for lack of standing—the minute order on its face appeared to have nothing to do with her.

Correspondence in the superior court file shows that, after the January 8 hearing, Diaz promptly asked opposing counsel for a draft of the proposed order so that she could register any objections she might have. No draft was forthcoming. The correspondence also shows that Diaz simultaneously sought opposing counsel's stipulation to correct a clerical error in the September 7 judgment, so that the judgment would state that the attorney fee award was against Moore alone. Kaufman's counsel refused to stipulate.

At some point after the January 8 hearing, the judgment was amended by interlineation to reflect the amounts of the fees and costs awarded. Nothing in the superior court file indicates the date on which any interlineation took place.[3]

In its current form, the judgment reflects that certain amounts were written in but later struck out and replaced by others. The record contains a declaration from Diaz to which is attached a copy of the judgment as she found it when she examined the court file in June 2002, six months after Kaufman's motion for attorney fees was granted. That copy of the judgment reflects an attorney fee award of $39,596.25 and a costs award of $3,260.03 that was struck out and replaced by a costs award of $41,506.75. At some later time, the judgment was further modified: The $41,506.75 costs award was struck out and replaced by an award of $1,627.50, which was also struck out and replaced by an award in the identical amount of $1,627.50. The figure of $41,223.75 (i.e., the sum of the fee award of $39,596.25 and the costs

---

[3] Thus, assuming that the interlineation would have signaled the start of Diaz's time to file a notice of appeal (see fn. 2, *ante*), it is impossible to determine from the record when her time started to run.

award of $1,627.50) was further interlineated, followed by the word "total." Again, nothing in the record indicates the date on which any of these interlineations or strikeouts occurred or who made them. It appears that no party was given notice when they took place.

On June 13, 2002, the trial court heard Diaz's ex parte application for an order correcting the clerical error in the judgment nunc pro tunc. The court's minute order and the transcript of the hearing reflect that the court denied the application for two reasons: (1) The court was concerned that it lacked jurisdiction to modify the judgment because Moore's appeal from the judgment was still pending, and (2) the court did not wish to address the issue on an ex parte basis. At the hearing, the court expressed no view as to whether Diaz was right that the judgment contained a clerical error. In fact, the court stated "I have to tell you I don't have a whole lot of recollection," adding later that "I don't know that there is a clerical error here. I truly don't, but I am not going to deal with this as an ex parte application."

Diaz then filed a noticed motion seeking the same relief. Kaufman opposed on the grounds that (1) there was no clerical error, (2) the motion was really a disguised and untimely motion for reconsideration of the September 7, 2001, judgment, and (3) the court lacked jurisdiction to modify the judgment while Moore's appeal from the judgment was pending.

The trial court heard Diaz's motion on January 8, 2003, fully one year after it had granted Kaufman's motion for attorney fees, 15 months after it had granted Kaufman's anti-SLAPP motion and entered judgment, and six months after admitting that the court already did not "have a whole lot of recollection" of the pertinent facts. The court denied Diaz's motion on all three grounds urged by Kaufman. The record contains no reporter's transcript of the hearing, so we have no way of knowing what parts of the record the trial court reviewed, or what information or argument the court relied on in reaching its decision. It is worth noting, however, that in opposition to the motion Kaufman provided the court with his notice of motion and motion under the anti-SLAPP statute and with *the conclusion* of his memorandum of points and authorities, but he omitted the remainder of his memorandum of points and authorities. Kaufman's selective presentation of the record thus could well have led the court to believe that Kaufman had argued in support of the propriety of an attorney fee award against Diaz under the anti-SLAPP statute, when in fact he had done no such thing.

In April 2004, Kaufman filed a motion for an award of attorney fees incurred in his attempts to enforce the judgment, and for accrued interest, against Diaz. The trial court granted the motion on June 4, 2004, ordering Diaz to pay $131,635.14 to Kaufman for his attorney fees and costs incurred in his efforts to enforce the original award of just over $41,000.

In September 2005, Diaz appeared in the trial court for a judgment debtor examination concerning the September 7, 2001, judgment. She stated her name and then declared that the September 7 judgment was "void" because the trial court never had jurisdiction to enter an award against her. She refused to answer any questions about her "private life" or "pocketbook." The trial court (Commissioner Murray Gross) heard and rejected Diaz's arguments and ordered her "to answer the questions [about her] financial affairs." She objected again. The court then found that she knew there was a judgment and that there was no stay, and the court again ordered Diaz "to answer the questions." Diaz refused, and the judgment debtor examination was terminated.

In December 2005, Kaufman applied for an order to show cause regarding contempt based on Diaz's refusal to answer questions at her judgment debtor examination. On January 26, 2006, Diaz filed opposition to Kaufman's application.

Following a hearing held on February 8, 2006, the trial court (Hon. John Shepard Wiley, Jr., who also presided over all subsequent hearings) signed an order to show cause directing Diaz to appear on April 11 (later continued to May 15) to explain "why [she] should not be adjudged in contempt of court and punished accordingly for willfully disobeying the [court's September 19, 2005, order to answer questions at her judgment debtor examination]."

In March 2006, Diaz filed a special motion to strike the order to show cause pursuant to section 425.16, contending that it was in substance and effect a cross-complaint against her and that Kaufman had filed the application for the order to deter her exercise of her constitutional right to petition the courts for relief. Kaufman opposed the motion, arguing that the anti-SLAPP statute applies to lawsuits and causes of action, not to an application for an order to show cause or to the order itself.

At the beginning of the May 15, 2006, hearing on the order to show cause, the trial court noted the two items then pending, the contempt and Diaz's special motion to strike, and told the parties they would proceed first with the contempt trial, beginning with the case-in-chief, after which Diaz would have an opportunity to cross-examine the witnesses and present evidence of her own. Only after the trial on the contempt would the court address Diaz's special motion to strike. In response, Diaz explained that she had expected her motion to be heard first and that, in the event of an adverse ruling, she would file an appeal from the order denying her special motion to strike, which would automatically stay the contempt proceedings.

The court did not comment on the special motion to strike but offered Diaz a recess so she could call her lawyer. Diaz explained that she did not have a lawyer on standby and again insisted that her motion be heard first. Following a brief recess during which Diaz confirmed that her lawyer was not available that day, Diaz informed the court that during the recess she had filed a notice of appeal from the trial court's "implicit denial" of her motion. The court— having not ruled on her motion or even expressed a tentative ruling—found that Diaz was "pursuing a tactic of delay," and by her conduct had "waived [her] right to counsel."

The court then conducted the evidentiary phase of the contempt trial and heard argument from the parties. Diaz defended on the ground that the underlying judgment against her is void and that a void judgment is subject to collateral attack in a contempt proceeding under *People v. Gonzalez* (1996) 12 Cal.4th 804 [50 Cal.Rptr.2d 74, 910 P.2d 1366] (hereafter *Gonzalez*). Having heard the evidence and argument, the court found that "there has been proof beyond a reasonable doubt that Ms. Diaz knew of the court order" and had the "physical ability to comply and that she willfully did disobey that court order to disclose her finances. . . . I would impose criminal sanctions depending on Ms. Diaz's willingness now to submit to another judgment exam in which she answered these questions." The court granted Diaz's request to confer with counsel before stating whether she would answer the questions.

Next, the court turned to Diaz's special motion to strike the order to show cause and denied it on the ground that it was not a valid use of the motion ("the special motion to strike is not designed to shield a party from enforcing a court order"). To give Diaz an opportunity to seek writ review of the contempt finding, the court then continued the proceedings to June 12 (and later to Aug. 14). The court also certified for interlocutory review Diaz's argument under *Gonzalez*. (See § 166.1.)

Following the August 14 hearing, at which Diaz informed the court she would not respond to the judgment debtor questions, the trial court signed and entered a formal order finding Diaz in contempt of court and sentencing her to jail until she agreed to answer all relevant questions about her financial affairs. She was ordered to surrender on September 11, 2006. On September 5, Diaz asked us for an emergency stay of all proceedings pending the outcome of the appeal she filed during the recess in the May 15 hearing. We issued a stay.

On December 13, 2007, we filed our opinion dismissing that appeal as premature. (*Moore v. Kaufman* (Dec. 13, 2007, B191228) [nonpub. opn.].) The remittitur issued on February 27, 2008. On March 17, 2008, Diaz appealed from the May 15, 2006, minute order denying her special motion to strike. That appeal, case No. B206679, is presently pending.

In her opening brief in the pending appeal, Diaz asked for various forms of relief. One of them was that we should "[a]llow the fair determination of a writ proceeding in consonance with the trial court's certification of the *People v. Gonzalez* . . . issue regarding Diaz' ability to collaterally attack the [d]ismissal [j]udgment in defense of the contempt action." We sent the parties a letter quoting that request and informing Diaz that if she wished to file such a writ petition and have it considered in connection with the pending appeal, she must file the petition no later than February 5, 2010. She filed the instant writ petition on February 5, 2010. The petition argues that the September 7, 2001, judgment is void as to Diaz and that she can therefore challenge it in defense of the contempt proceeding. We issued an order to show cause, ordered that the writ petition be considered concurrently with the pending appeal, and now order that they be consolidated.[4]

## DISCUSSION

■ The petition is meritorious. The judgment is void as to Diaz because she was not a party to the litigation and section 425.16 does not authorize an award of attorney fees against a party's attorney. Because the judgment is void as to Diaz, she may challenge it in defense of the contempt proceeding.

■ Subject to certain exceptions, an award of attorney fees to a defendant who prevails on a motion under section 425.16 is *mandatory*. (§ 425.16, subd. (c)(1) ["a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs" subject to exceptions]; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].) In the words of the Supreme Court, the purpose of the mandatory fee award is to discourage SLAPP suits "by imposing the litigation costs on *the party*" that files a SLAPP suit. (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1131, italics added.) Numerous cases have affirmed mandatory attorney fee awards to defendants under section 425.16, but no case mentions such an award's being granted against a plaintiff's *attorney* or even states that the attorney is a party to the appeal. (See, e.g., *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 327–329 [9 Cal.Rptr.3d 197]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 779, 785 [54 Cal.Rptr.2d 830]; *Robertson v. Rodriguez* (1995) 36

---

[4] Kaufman's request for judicial notice is granted.

Cal.App.4th 347, 351–352 [42 Cal.Rptr.2d 464].) There is thus no case authority for the proposition that section 425.16 provides for a mandatory award of attorney fees against a losing plaintiff's attorney. And nothing in the statute's language suggests that, although the award against a losing plaintiff is mandatory, the court retains discretion to grant an award against the plaintiff's attorney as well.

In addition, it would be highly unusual if the statute provided for a mandatory award of attorney fees against a losing plaintiff's attorney. Fee awards against attorneys are ordinarily available only as sanctions and are generally not allowed under routine fee-shifting provisions like the one in section 425.16. (See 1 Pearl, Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2010) § 2.41, p. 52 ["Other than sanctions, however, fee liability may not be imposed on the party's attorney."]; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 62–63 [124 Cal.Rptr.2d 507, 52 P.3d 685] [describing the anti-SLAPP statute's attorney fee provisions as "fee-shifting provisions"]; *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1131 [same]; *In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1110 [23 Cal.Rptr.2d 865] ["sanctions could be imposed against an *attorney* under Code of Civil Procedure section 128.5," but a "fee-shifting award" is against "a *party*," not against an attorney].) If the Legislature had intended section 425.16 to depart from this standard practice and make the losing plaintiff's attorney liable for the fee award, it would presumably have said so. But the statute says nothing about holding counsel liable for fee awards.

■ In his written return to the petition, Kaufman's only substantive argument against the proposition that the anti-SLAPP statute does not authorize an award of attorney fees against a plaintiff's counsel is that the statute should be broadly construed. It is true that the statute should be broadly construed (see § 425.16, subd. (a)), but that principle by itself cannot justify interpreting the statute to authorize either a mandatory or a discretionary fee award against a plaintiff's counsel. As we have explained, the statute says nothing about mandatory fee awards against counsel, and no court has ever interpreted the statute as requiring such an award. And a discretionary fee award against a plaintiff's counsel (accompanying the mandatory award against the plaintiff) likewise finds no support in the text of the statute, which speaks only of a mandatory fee award. We must interpret the statute broadly, but we also must not rewrite it. The statute does not provide for an attorney fee award against a plaintiff's counsel.

■ "A judgment in favor of a person who is not a party to the action is obviously beyond the authority of the court," and hence is void. (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 315, p. 927 [collecting cases].) That rule applies if the nonparty is the attorney or former attorney of a party.

(See, e.g., *Wong v. Superior Court* (1966) 246 Cal.App.2d 541, 548 [54 Cal.Rptr. 782] [attorney]; *Chase v. Superior Court* (1962) 210 Cal.App.2d 872, 874, 876 [27 Cal.Rptr. 383] [former attorney].) "The objections to a judgment *against* a stranger to the action are even more serious than those to a judgment *in favor of* a stranger . . . . The judgment is wholly void." (2 Witkin, Cal. Procedure, *supra*, § 316, p. 927, citation omitted [collecting cases]; see, e.g., *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1842–1843 [12 Cal.Rptr.2d 398].) An unauthorized award of costs is likewise void. (See *Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1683–1684 [52 Cal.Rptr.2d 599] [discussing *Michel v. Williams* (1936) 13 Cal.App.2d 198, 201 [56 P.2d 546]]; see also *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950 [126 Cal.Rptr. 805, 544 P.2d 941].)

■ Because the judgment is void as to Diaz, subsequent orders purporting to enforce the judgment against her, such as the order that she answer questions at the judgment debtor examination, are likewise void. " ' "A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." [Citation.]' " (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1240 [79 Cal.Rptr.2d 719], quoting *Bennett v. Wilson* (1898) 122 Cal. 509, 513–514 [55 P. 390]; see also *Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1136 [52 Cal.Rptr.3d 197].)

■ "The rule is well settled in California that a void order cannot be the basis for a valid contempt judgment." (*Gonzalez, supra*, 12 Cal.4th at p. 817.)[5] More broadly, "[a] void judgment may be attacked ' "anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever." ' " (*People v. Vasilyan* (2009) 174 Cal.App.4th 443, 451 [94 Cal.Rptr.3d 260], quoting *Andrews v. Superior Court* (1946) 29 Cal.2d 208, 214–215 [174 P.2d 313].) Accordingly, "in [a] contempt proceeding, the contemner may . . . collaterally challenge the validity of the order he or she is charged with violating." (*Gonzalez, supra*, 12 Cal.4th at p. 819 [collecting cases].)

■ The petition is therefore meritorious. The judgment is void as to Diaz, so the order requiring her to answer questions at her judgment debtor examination is void, and she may defend on that ground in the contempt proceeding.

---

[5] In his written return to the petition, Kaufman's only argument against application of *Gonzalez* is that all of Diaz's challenges to the judgment are barred by the law of the case. We discuss the law of the case *post*.

The only further issue is the law of the case. In a prior appeal, Diaz argued that the judgment "is void because section 425.16 does not authorize an order that makes an attorney jointly liable with her client for fees and costs." (*Moore v. Kaufman* (Jan. 31, 2006, B176537) [nonpub. opn.].) We "summarily reject[ed]" the argument, concluding that Diaz had "waived" it by failing to raise it earlier, and we also stated, without further elaboration, that "the September 7 judgment against Diaz is not void." (*Ibid.*)

Under the doctrine of the law of the case, we ordinarily will not revisit an issue of law that was actually presented and determined in a prior appellate proceeding if the issue was necessary to the decision in the prior case. (See, e.g., *People v. Shuey* (1975) 13 Cal.3d 835, 841–842 [120 Cal.Rptr. 83, 533 P.2d 211].) If "there has been a manifest misapplication of existing principles resulting in substantial injustice," however, we may "decline[] to adhere to" the law of the case. (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491–492 [20 Cal.Rptr.3d 890, 100 P.3d 433].) Accordingly, "[t]he doctrine of law of the case is a discretionary policy which should not be followed if it results in a manifestly unjust decision. In looking to a just determination of the rights of the parties, an appellate court is not precluded from reconsidering questions decided on a former appeal." (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 835 [61 Cal.Rptr.2d 909].)

Kaufman is seeking to collect over $170,000 from Diaz on the basis of a patently void judgment, and Diaz currently faces the prospect of incarceration for resisting Kaufman's collection efforts. Were we to deny Diaz's writ petition on the basis of the law of the case, we would be deliberately shutting our eyes to a manifest misapplication of existing principles that results in substantial injustice. We therefore exercise our discretion to reconsider whether the judgment is void as to Diaz. For the reasons already discussed, we conclude that it is.[6]

## DISPOSITION

The petition is granted. The trial court is directed to vacate its order finding Diaz in contempt and to enter an order amending the September 7, 2001, judgment, nunc pro tunc, to delete Diaz's name from the judgment and to provide that Moore alone is liable for the award of attorney fees and costs. Diaz shall recover her costs of this writ proceeding.

---

[6] In addition, our statement in a footnote in *Moore v. Kaufman, supra*, B165018 that the attorney fee award against Diaz was "correct on the merits" does not constitute the law of the case because the point was unnecessary to our decision. (See *People v. Shuey, supra*, 13 Cal.3d at p. 842.)

The appeal is dismissed as moot. The parties shall bear their own costs of appeal.

Mallano, P. J., and Chaney, J., concurred.