Filed 3/11/26  Warren v. Shahar CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SCOTT KENNETH WARREN,<br><br>　　　Defendant, Cross-complainant and Respondent,<br><br>　　　v.<br><br>LAURI SHAHAR,<br><br>　　　Cross-Defendant and Appellant. | B339274<br><br>(Los Angeles County<br>　Super. Ct. No. 22STCV26316) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Rolf Michael Treu, Judge.  Reversed with instructions.

　　　KP Law, Zareh Jaltorossian for Cross-Defendant and Appellant.

　　　Wolfe & Wyman, Matthew C. Bures, Spencer J. Reckon for Defendant, Cross-complainant and Respondent.

# INTRODUCTION

Martin Warren and Bessie Warren sued their adult sons, Scott Warren and Bruce Warren, over some family financial disagreements. Scott[1] then cross-complained and included his sister, Lauri Shahar, as a cross-defendant. After a trial, Scott prevailed. The trial court entered a single judgment, which stated that Martin and Bessie take nothing on their complaint, and Scott could recover his costs against them; it also stated that Lauri was liable to Scott for $600,000 on the cross-complaint, and Scott could recover his costs against her.

Scott then filed a single memorandum of costs that included all of his costs incurred—both in defending the complaint and in prosecuting the cross-complaint. Lauri, mistaking the memorandum of costs as pertaining only to Scott's litigation against Martin and Bessie, did not move to strike or tax costs. Lauri paid the $600,000 judgment against her.

Scott then attempted to recover his full amount of costs from Lauri: $175,195.47. This amount included $107,476.25 in expert witness fees under Code of Civil Procedure 998,[2] based on a section 998 offer to compromise that Scott served only on Martin and Bessie. Lauri moved under section 473, subdivisions (b) and (d), to correct the trial court's award of costs against her. Lauri argued that she could not be liable for costs Scott incurred in litigating against Martin and Bessie, including the expert witness fees. The trial court denied Lauri's motion, and she appealed.

---

[1] We follow the parties' lead and refer to individuals by their first name to avoid confusion.

[2] All undesignated section references are to the Code of Civil Procedure.

We reverse. The trial court acted in excess of its jurisdiction by awarding Scott costs against Lauri that were not incurred in litigation against Lauri and were not authorized by law. Because Lauri's appeal challenges as void only the expert witness fees under section 998, we strike those fees from the judgment and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Complaint, cross-complaint, and judgment**

Martin and Bessie have three adult children, Scott, Bruce, and Lauri, all of whom are attorneys. In August 2022, Martin and Bessie sued Scott and Bruce for financial elder abuse and other claims. The substance of the litigation is not relevant to this appeal, so we include only a very brief summary for context. Martin and Bessie alleged that they owned several real properties, and along with Scott and Bruce, they "worked together as a family and ran an informal family business for well over 25 years without dispute." Eventually, however, the family had a falling out. Martin and Bessie alleged that after they had transferred most of their assets to the children, Scott and Bruce failed to provide the financial support they had promised, leaving Martin and Bessie without sufficient financial resources.

Scott then cross-complained against Martin, Bessie, Lauri, and Lauri's son, Toren Shahar.[3] As relevant here, Scott alleged that Lauri reneged on a promise to pay Scott $600,000. Causes of action included anticipatory breach of contract and breach of

---

[3]      For the cross-complaint, Scott sued individually and as trustee of the Hard Habit Trust, of which Bruce is the beneficiary. The distinction between Scott individually and Scott as trustee is not relevant to the appeal.

3

fiduciary duty.  Scott sought declaratory relief and other damages.

The case went to a jury trial in July and August 2023.  On Martin and Bessie's claims, the jury returned a verdict in favor of Scott and Bruce.  On Scott's cross-complaint against Martin and Bessie, the jury found in favor of Scott for anticipatory breach, but found Scott's damages to be $0.  On Scott's cross-claims against Lauri, the jury found in favor of Scott for anticipatory breach, and found Scott's damages to be $600,000.

The court entered a judgment on October 2, 2023.[4]  It stated that Martin and Bessie take nothing on their complaint against Scott and Bruce, and that "these said defendants recover their costs and disbursements in the amount of $____ against said plaintiffs."  The judgment further stated that Scott recover $600,000 from Lauri, plus interest, and that Scott "recover [his] costs and disbursements in the amount of $____ against said cross-defendant Lauri Shahar."

## B.    Post-judgment costs

On October 11, 2023,[5] Scott filed a memorandum of costs seeking $175,195.47 in total costs.  The memorandum did not specify whether the costs arose from the action on the complaint or the cross-complaint, or if they were incurred in litigation against Martin and Bessie or against Lauri. The largest category of costs was $107,476.25 in expert witness fees for four witnesses;

---

[4]    This document is titled "Corrected Judgment on Jury Verdict"; it is the only judgment in the record on appeal.  An earlier judgment was apparently entered on September 27, 2023.

[5]    Some documents in the appendixes on appeal do not have filing stamps; we therefore refer to the date they were signed.  To the extent there are any minor date discrepancies, they have no effect on the issues in this appeal.

4

this section referenced attachment 8b(5). Attachment 8b(5) stated that expert fees were warranted "per Code of Civil Procedure section 998," because Scott had served a settlement offer under section 998 "upon Plaintiffs on March 16, 2023." The section 998 offer was attached; it was addressed to Martin and Bessie only, and had blank signature lines allowing Martin and Bessie to accept the offer. Attachment 8b(5) continued, "Plaintiffs did not respond to Scott's Section 998 Offer, before it expired pursuant to Code of Civil Procedure section 998(b)(2). Plaintiffs failed to obtain a more favorable judgment or award at trial. Accordingly, Scott respectfully requests costs for the post-offer services provided by his expert witnesses pursuant to Code of Civil Procedure section 998(c)(1)."[6]

On January 23, 2024, Scott filed a motion seeking an assignment of rents from Lauri, stating in part that he, the judgment creditor, "has a judgment against the judgment debtor in the amount of $775,195.47, plus 10% legal interest from entry of judgment." Scott asserted in the motion, "The Court entered judgment on September 27, 2023 and entered a corrected judgment on October 2, 2023. [Scott] filed a cost bill for $175,195.47 on October 11, 2023. [Lauri] did not file a motion to tax costs or otherwise object to or challenge the cost bill. . . . [Lauri] has not filed an appeal and the judgment is now final. [¶] The judgment awarded [Scott] the $600,000 as awarded by the

---

[6]     As discussed more fully below, section 998 states that if a defendant's section 998 offer is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff "shall pay the defendant's costs from the time of the offer," including "postoffer costs of the services of expert witnesses." (§ 998, subd. (c)(1).)

5

jury, plus $175,195.47 in costs, plus interest on the $600,000 at 10% per year.  Interest accrues at the rate of $164.38 per day."

## C.     Lauri's motion to correct the cost award

On February 23, 2024, Lauri filed a motion to correct the judgment "to remove improper costs and expert witness fees." Lauri and her counsel stated that they had received a single judgment only: the one ordering her to pay Scott $600,000 on his cross-complaint, with separate blank lines for costs awards—one line for costs against Martin and Bessie, and one line for costs against Lauri.  Lauri's counsel noted in his declaration that despite scouring the online docket, he could not find any judgment that included costs, and "I still do not know how the Court assigned these costs for purposes of the Judgment."[7]  Lauri stated in her declaration that she had already paid the $600,000 judgment.

Lauri and her counsel stated that they understood Scott's memorandum of costs to be directed toward Martin and Bessie only.  They stated that Scott's claimed costs were primarily incurred in his defense against Martin and Bessie's allegations, "the costs prayed for could not have been attributable to the Cross-Complaint against Lauri," and the costs memorandum did not mention the cross-complaint or Lauri at all.  For example, Scott's costs memorandum sought costs related to his first appearance fee relating to the complaint, and fees relating to Scott's motion for summary judgment against Martin and Bessie. In addition, the expert witness costs were based on the section

---

[7]     Lauri also noted that Bruce had filed a memorandum of costs, and she had no way of knowing whether those costs had also been awarded against her, even though Bruce was not a party to the cross-complaint.

6

998 offer that was served only to Martin and Bessie. The motion pointed out that section 1033.5, subdivision (b)(1) states that expert fees are "not allowable as costs, except when expressly authorized by law." Lauri asserted, "The fact that Scott has unilaterally determined that Lauri not only owes the Judgment amount but also the entire amount of costs and fees that [Scott] incurred in defending against Plaintiffs['] Complaint is improper and nonsensical."

The motion cited section 473, subdivision (d) (section 473(d)), which allows the court to "correct clerical mistakes in its judgment" or "set aside any void judgment or order." Lauri primarily relied on the "clerical mistakes" portion of the subdivision, and asserted that "the clerk may have inadvertently entered costs in favor of" Scott and against Lauri "based on a Memorandum of Costs that Scott filed . . . in connection with his successful defense of [Martin and Bessie's] Complaint." She argued, "Since Lauri was never found liable to Scott on the Complaint – nor could she have been since she was never a party plaintiff to the Complaint – there was no basis for the clerk to attribute such fees and costs to Lauri on the Judgment."

In the alternative, Lauri asserted that she and her counsel, through "mistake, inadvertence, surprise, or excusable neglect, justifiably but mistakenly believed that Scott's [memorandum of costs] was directly solely against" Martin and Bessie, and therefore she did not file a motion to strike or tax costs. Lauri cited section 473, subdivision (b) (section 473(b)), which allows the court to "relieve any party" or counsel from a judgment or order "taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Lauri requested that the court correct the judgment to show that the cost award

7

was against Martin and Bessie only, or reduce the award against Lauri.

Scott opposed Lauri's motion. He asserted that because Lauri failed to file a motion to strike or tax costs within the statutory timeframe, she had waived any objection to Scott's costs. Scott argued that "Lauri made a conscious decision not to oppose Scott's Cost Bill. Lauri's decision does not amount to mistake, inadvertence, surprise, or excusable neglect." Scott also noted that Lauri failed to file a proposed motion to strike or tax costs, as required by section 473(b), which states in part, "Application for . . . relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein." Scott further asserted, "There was no doubt that Scott was seeking costs from Lauri. Scott's itemized cost bill clearly includes costs of suit attributable to Scott's cross-complaint against Lauri." Scott noted that he sought recovery of jury fees for the trial that encompassed both the complaint and cross-complaint, as well as the costs relating to service on Lauri, Lauri's deposition, and Scott's opposition to Lauri's motion in limine.

In addition, Scott argued, "It was proper for the clerk to enter judgment in accordance with Scott's uncontested Memorandum of Costs. So, the cost award was not a clerical error." He asserted that "the clerk's entry of costs on the judgment is a self-executing, ministerial process," and the "clerk properly performed their ministerial obligation by entering costs consistent with Scott's uncontested cost bill. Accordingly, there is no clerical error for the Court to correct pursuant to CCP § 473 (d)."

Lauri filed a reply in support of her motion, asserting that Scott "acknowledges by his silence that the vast majority of the

8

costs . . . related solely to his successful defense of plaintiffs' complaint." Lauri also filed a proposed motion to strike or tax costs with her reply.

After a short hearing, the trial court denied Lauri's motion in a written ruling on June 6, 2024. As to section 473(d) and whether the clerk inadvertently entered costs on the blank line of the judgment relating to Lauri, the court stated, "including a blank space to enter Scott's costs and disbursements against Lauri was not an error inadvertently made by the clerk. Further, since Lauri did not timely file a motion . . . to strike or tax [costs], the clerk did not inadvertently enter judgment in accordance with Scott's uncontested Memorandum of costs."

The court also found that Lauri failed to demonstrate that she was entitled to discretionary relief under section 473(b). It stated, "[T]he Court does not agree that a reasonably prudent person would have thought the Scott memo was solely directed at Plaintiffs based on the caption." To the extent Lauri argued that Scott was not legally entitled to recover certain costs from her, such as the expert costs under section 998, the court stated, "Lauri should have disputed these costs in a Motion to Strike or Tax Costs." The court then repeated several of Scott's arguments in support of its conclusion: "Scott asserts there are costs in the Scott memo that could only be attributed to costs associate[d] with the prosecution of his cross-complaint against Lauri. Scott also contends Lauri was on notice that she would be required to pay costs and disbursements as indicated on the Court's judgment. Scott argues that a reasonably prudent person also could have contacted Scott's counsel and inquired as to whether the memo was recovering costs against Lauri, however, Lauri and her counsel did not inquire and chose not to file a motion to tax.

9

Based on the foregoing, the Court does not find that Lauri has met her burden of demonstrating that she is entitled to discretionary relief." The court ordered Lauri "to pay the total amount due of $175,195.47 within 10 days of the Court's order."

Lauri timely appealed from the court's June 6 order.

## DISCUSSION

### A. Jurisdiction on appeal and estoppel

First we address Scott's contention that this court lacks jurisdiction because Lauri's notice of appeal was untimely. Scott bases his argument on the date the initial judgment was served, September 27, 2023; he argues Lauri had 60 days thereafter to appeal. He contends Lauri's June 12, 2024 notice of appeal was therefore untimely, depriving this court of jurisdiction. (See, e.g., *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881 [the timely filing of a notice of appeal is an "'absolute prerequisite to the exercise of appellate jurisdiction'"].)

This argument is meritless. Lauri appealed the trial court's June 6, 2024 order denying her motion, which is appealable as an order made after a judgment. (§ 904.1, subd. (a)(2).) Thus, her June 12, 2024 notice of appeal was timely.

Scott also argues that Lauri is "judicially estopped" from challenging the court's order on appeal. In her opposition to Scott's efforts to collect the cost award, which included Scott levying money from Lauri's bank account and garnishing her wages, Lauri stated in a declaration that she was prepared to pay the full cost award if her motion to correct the cost award was not successful. Scott argues that by appealing the court's order on her motion instead of immediately paying the cost award, Lauri has now adopted a "totally inconsistent position."

10

This argument is also meritless. "Judicial estoppel is an extraordinary remedy that is applied 'with caution.' [Citation.] To invoke the rule, a party's inconsistent position must arise from intentional wrongdoing or an attempt to obtain an unfair advantage." (*Kitty-Anne Music Co. v. Swan* (2003) 112 Cal.App.4th 30, 35.) Judicial estoppel requires a showing that a party has taken two inconsistent positions, and ""'was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true).'""" (*Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 842.)

Scott has not demonstrated that judicial estoppel applies. First, Lauri's positions are not inconsistent. Lauri represented that she will pay the cost award if ordered to (making Scott's collections efforts unnecessary), and she has not taken the position that she will *not* pay the cost award if her challenge to it is unsuccessful. In addition, Lauri's appellate challenge to the cost award is consistent, not inconsistent, with her arguments below. Scott is attempting to portray Lauri's statement as a promise not to appeal, but that is not a reasonable interpretation of her statement. Second, Scott has not shown that Lauri was successful in the trial court. The court denied Lauri's challenge to the cost award, and did not grant her the relief she sought. Moreover, Scott has not demonstrated that Lauri engaged in any intentional wrongdoing or attempted to obtain an unfair advantage. Thus, judicial estoppel does not apply. We therefore turn to the parties' substantive arguments.

## B. The cost award

Lauri asserts that to the extent the judgment holds her responsible for certain costs Scott incurred in litigating against Martin and Bessie, the judgment is void and the trial court erred

in denying her motion under section 473(d).  Scott argues that, at most, the cost award is voidable rather than void, which cannot be corrected under section 473(d).  Scott also argues that Lauri has forfeited her voidness argument by failing to assert it below, and she forfeited any objection to the costs by failing to file a motion to tax or strike his memorandum of costs.  We find that Lauri's arguments have not been forfeited, and the cost award is at least partially void.

      1.    *Legal background*

We begin by observing the legal basis and procedure for a cost award in a typical case, and note how the procedure differed here.  A "prevailing party is entitled as a matter of right to recover costs in any action."  (§ 1032, subd. (b).)  To claim these costs, the prevailing party must serve and file a memorandum of costs, which "must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case."  (Cal. Rules of Court, rule 3.1700(a)(1).)

"Any notice of motion to strike or to tax costs must be served and filed 15 days after service of the cost memorandum."  (Cal. Rules of Court, rule 3.1700(b)(1).)  "After the time has passed for a motion to strike or tax costs or for determination of that motion, the clerk must immediately enter the costs on the judgment."  (*Id*., rule 3.1700(b)(4).)  In a typical case, "[t]he court's duty to award costs to the party entitled to them under Code of Civil Procedure section 1032 is ministerial."  (*Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.* (1990) 223 Cal.App.3d 924, 928; see also *Miles California Co. v. Hawkins* (1959) 175 Cal.App.2d 162, 165 (*Miles*) [because "the clerk has

12

the duty to include the costs, his act in doing so . . . is a ministerial matter"].)

It is unclear whether or how the court below entered costs into the judgment. Scott states that after Lauri failed to file a motion to tax, "the clerk properly entered the uncontested costs of suit on the judgment." The trial court also suggested this occurred in its order denying Lauri's motion. Apparently, however, no party has a copy of the judgment that includes the costs awarded to Scott. Scott does not include a record citation in support of his statement, no copy of this judgment is included in the record on appeal, Lauri and her counsel stated that they were never served a copy, and the trial court docket summary does not include any notation that the judgment was updated with a cost award.

We observe that the court could not have entered a cost award into the October 2, 2023 judgment based on Scott's memorandum as a clerical or ministerial task. The single judgment resolved both the complaint and the cross-complaint. It included a blank line for a cost award against Martin and Bessie, who were parties to both the complaint and the cross-complaint, and a blank line for a cost award against Lauri, who was a party only to the cross-complaint. Yet Scott filed a single memorandum of costs that failed to differentiate between the costs he incurred in each action or against which parties.

To enter costs into the judgment here, the clerk would have had to apportion costs between Martin and Bessie on the one hand and Lauri on the other, or hold that one party or the other was responsible for all of the costs, or find that the parties were jointly and severally responsible for the costs, or enter the full amount of costs onto both lines (thus granting Scott a double

13

recovery).  Because each of these options would require a determination about the parties' responsibilities for the costs, none of them could have been completed as a ministerial task. (See, e.g., *In re Candelario* (1970) 3 Cal.3d 702, 705 [distinguishing ministerial acts from those in which a court exercises judicial discretion].)

Here, Scott sought to enforce the entire cost award against Lauri as though it was part of an existing judgment.  Then, in the June 6, 2024 order denying Lauri's motion, the court ordered Lauri to pay Scott's entire cost bill of $175,195.47.  With this background in mind, we turn to the parties' substantive arguments.

2. *The cost award against Lauri was partially void*

Lauri contends the cost award in the judgment, as well as the court's order holding her liable for all of Scott's costs, are void and must be set aside under section 473(d).  She focuses on the costs arising from the section 998 offer, $107,476.25 in expert witness fees, because she was not a party to that section 998 offer.

"A judgment is void if the trial court lacks jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction, lacked personal jurisdiction over the defendant, or granted relief the court had no power to grant.  [Citations.]  If the court has fundamental jurisdiction but exceeds its jurisdiction by acting contrary to its statutory duties, the judgment is merely voidable, not void.  [Citations.]  And a judgment that is merely voidable is not subject to section 473, subdivision (d)." (*W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 13.)

14

Here, the court lacked jurisdiction in the fundamental sense and granted relief it had no power to grant.  First, the court lacked jurisdiction over Lauri to find her liable for costs incurred in the action on the complaint, to which Lauri was not a party.  "A cross-complaint is generally considered to be a separate action from that initiated by the complaint."  (*Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 134.)  The court did not have jurisdiction over Lauri with respect to the complaint.  (See *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 615 (*Moore*) ["'A judgment in favor of [or against] a person who is not a party to the action is obviously beyond the authority of the court' and hence is void"]; *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717 ["a judgment may not be entered either for or against one who is not a party to an action or proceeding"].)

Second, to the extent the court had jurisdiction over Lauri as a party to the cross-complaint, it acted in excess of its jurisdiction by ordering Lauri to pay costs unrelated to Scott's prosecution of the cross-complaint against her.  By doing so, the court charged Lauri with costs that are not allowable by law.  "''It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party.'''"  (*Southern California Sunbelt Developers, Inc. v. Banyan Limited Partnership* (2017) 8 Cal.App.5th 910, 931; see also *Boonyarit v. Payless Shoesource, Inc.* (2006) 145 Cal.App.4th 1188, 1192 ["A party's right to recover costs is governed entirely by statute"].)  Recoverable costs must be "necessarily incurred in the case"  (Cal. Rules of Court, rule 3.1700(a)(1)), and "reasonably necessary to the conduct of the litigation." (§ 1033.5, subd. (c)(2).)

15

Scott's memorandum of costs included costs that were neither "necessarily incurred in the case" against Lauri nor "reasonably necessary to the conduct of the litigation" against Lauri. Rather, certain costs were based solely on Scott's litigation against Martin and Bessie. The most obvious of these cost items—and the only category of costs Lauri challenges on appeal as void—are Scott's claimed expert witness fees of $107,476.25. Expert witness fees are "not allowable as costs, except when expressly authorized by law." (§ 1033.5, subd. (b)(1).) Scott's entitlement to expert witness fees was based on the offer to compromise he made to Martin and Bessie under section 998, subdivision (c)(2), which provides, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer," including "costs of the services of expert witnesses."

These statutory requirements were clearly not met between Scott and Lauri, because Scott did not serve a section 998 offer on Lauri, and Lauri did not fail to accept a section 998 offer from Scott. No authority holds that postoffer costs under section 998 may be recovered from a party who was never served a section 998 offer. "'[T]he clear purpose of section 998 . . . is to encourage the settlement of lawsuits prior to trial.' [Citation.] 'Section 998 achieves its aim by punishing a party who fails to accept a reasonable offer from the other party.'" (*Westamerica Bank v. MBG Industries, Inc.*, *supra*, 158 Cal.App.4th at p. 129.) Here, neither Scott nor the trial court may penalize Lauri—who was not a party to the complaint or the section 998 offer—for conduct Lauri did not engage in as a litigant. (See *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 144 [section 998's cost

shifting involves "the obligation to pay costs arising out of [a party's] behavior as a litigant"].)[8]

Thus, the cost award against Lauri based on section 998 is void, because it grants Scott relief against Lauri that is not permitted by law. "When the court is permitted by statute to render judgment for costs, an excessive award would be erroneous rather than void. However, an award of costs not authorized by law is a '"grant of relief to one of the parties which the law declares shall not be granted"' and is therefore void." (*Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1684; see also *Moore, supra*, 189 Cal.App.4th at p. 616 ["An unauthorized award of costs is . . . void"]; *Michel v. Williams* (1936) 13 Cal.App.2d 198, 201 [an award of costs unauthorized by law "is a 'grant of relief to one of the parties which the law declares shall not be granted,' and is therefore void"].)

Scott contends the cost award cannot be void, because at most this case involves "ordinary procedural error, not fundamental jurisdiction." He asserts that the court had personal jurisdiction over Lauri, she participated in the trial, she received the memorandum of costs, and "the trial court had authority to award [Scott's] costs of suit." This is partially accurate; however, the court's authority as to Lauri extended only

---

8 It appears that Scott also included other costs in his memorandum of costs that related solely to his defense against the complaint, not the prosecution of his cross-complaint against Lauri. For example, several cost items are related to Scott's motion for summary judgment, which, according to Lauri, sought summary judgment only on the complaint. In this appeal, however, Lauri argues only that the section 998 expert fees are void.

to awarding costs that Scott incurred in his litigation *against Lauri*.  The court had no authority to enter a judgment or order holding Lauri liable for costs Scott incurred in his litigation against Martin and Bessie, including the action on the complaint, to which Lauri was not a party.

Many analogous cases demonstrate the point.  In *Moore, supra*, 189 Cal.App.4th 604, for example, the trial court awarded attorney fees against Moore and her counsel, Diaz, after a special motion to strike Moore's complaint was granted under the anti-SLAPP statute, section 425.16.  The Court of Appeal held that the "judgment is void as to Diaz because she was not a party to the litigation and section 425.16 does not authorize an award of attorney fees against a party's attorney." (*Id.* at p. 614.)  The court held that a judgment against a nonparty is void because it is "'obviously beyond the authority of the court,'" and an "unauthorized award of costs is likewise void." (*Id.* at p. 616.)  The court further held, "Because the judgment is void as to Diaz, subsequent orders purporting to enforce the judgment against her . . . are likewise void." (*Ibid*.)

In *311 South Spring Street Co. v. Department of General Services* (2009) 178 Cal.App.4th 1009, the trial court awarded postjudgment interest at a rate of 10 percent, which was contrary to the 7 percent rate allowed in the California Constitution.  Although the trial court had jurisdiction over the matter and the parties, the Court of Appeal held that "the award in excess of 7 percent interest is void and thus subject to collateral attack because it constitutes relief which the court had no power to grant." (*Id.* at p. 1012.)

In *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, the parties entered into a stipulated judgment,

18

but the court included interest on the judgment that "was clearly beyond the stipulation of the parties." (*Id.* at pp. 838-839.) The Court of Appeal considered whether the error "renders the judgment void as being beyond the jurisdiction of the court, or simply erroneous but not beyond the jurisdiction of the court." (*Id.* at p. 840.) The court agreed "with the decided cases in giving the broader definition to the term 'lack of jurisdiction' to produce a void judgment, subject to collateral attack, whenever the trial court has made a 'grant of relief to one of the parties which the law declares shall not be granted.'" (*Id.* at p. 847.) The court concluded that "the interest-on-the-judgment provision . . . must be considered void." (*Id.* at p. 848.)

The same reasoning applies here—the court went beyond the scope of its authority in ordering Lauri to pay Scott's expert witness costs based on his section 998 offer to Martin and Bessie. Thus, to the extent the court amended the judgment to hold Lauri liable for Scott's expert witness costs of $107,476.25, that portion of the judgment is void, and the court's post-judgment order that Lauri pay this amount of Scott's costs is also void.

Scott asserts that Lauri did not make a voidness argument to the trial court, so she has forfeited that contention. Although Lauri focused on the "clerical mistake" portion of section 473(d) in the trial court, she did assert that the court had no authority to hold her responsible for the costs Scott incurred in his litigation against Martin and Bessie. In addition, "a void judgment may be attacked at any time." (*California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 216; see also *Moore, supra*, 189 Cal.App.4th at p. 616.) Scott also argues that Lauri waived any objection to the cost award by failing to file a memorandum of costs. However, Lauri's lack of objection cannot supply the trial

court with the authority to grant Scott relief that is unauthorized by law. Thus, Lauri has not forfeited her arguments.

In sum, the trial court's order that Scott may recover from Lauri $107,476.25 in expert witness fees based on Scott's section 998 offer is void. This cost award is void to the extent it has been entered into the judgment, and it is void as it is reflected in the trial court's June 6, 2024 order denying Lauri's motion.

We express no opinion on the validity of any other costs charged to Lauri, because she did not challenge them as void on appeal. Lauri asks that we remand the matter "so that the trial court can make a proper determination as to which of Scott's claimed costs are properly attributable to the litigation of the cross-claims against Lauri." We agree this is an appropriate remedy under the circumstances.[9]

---

[9] Because we find the cost award was partially void and remand for further proceedings, we need not reach Lauri's alternative argument that the trial court erred in denying her motion based on section 473(b).

# DISPOSITION

The trial court's June 6, 2024 order is reversed. To the extent the trial court has amended the judgment to include a cost award to Scott against Lauri that includes $107,476.25 in expert witness fees based on Scott's section 998 offer, that award is stricken as void. The trial court shall conduct further proceedings to address any additional potentially void costs awarded against Lauri in accordance with this opinion. Lauri is entitled to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.


21